J-A22027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TATIA LEA BLACKWELL | |
| Appellant | No. 1965 MDA 2014 |

Appeal from the Judgment of Sentence October 23, 2014
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000032-2013

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED OCTOBER 02, 2015**

Tatia Blackwell files this direct appeal from a judgment of sentence of 90 days to 6 months' imprisonment for driving under the influence (second offense) ("DUI").[1]  Blackwell's principal argument is that the arresting officer lacked probable cause or reasonable suspicion to stop her car on the roadway, and therefore the trial court erred by refusing to suppress all evidence arising from the traffic stop.  The trial court properly held that probable cause existed to stop Blackwell's car for speeding.  For this reason and other reasons provided below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1).

On December 1, 2012, following a traffic stop, Blackwell was charged with DUI and other offenses.[2]  Blackwell filed an omnibus pretrial motion requesting, *inter alia*, suppression of all evidence arising from the traffic stop.  On April 29, 2013, the trial court ordered Blackwell to file a memorandum in advance of the hearing on her suppression motion.  On May 16, 2013, Blackwell submitted her memorandum;  the Commonwealth submitted an opposing memorandum sixteen days later.

On August 29, 2013, the trial court held a hearing on Blackwell's motion to suppress.  At the conclusion of the hearing, the court denied the motion.

On September 16, 2014, following a one-day trial, a jury found Blackwell guilty of DUI.  The jury specifically found beyond a reasonable doubt that Blackwell was informed of her implied consent warnings but still refused to submit a blood sample on the night in question.  On October 23, 2014, the court imposed sentence.  Blackwell filed a timely notice of appeal, and both Blackwell and the trial court complied with Pa.R.A.P. 1925.

---

[2] In addition to the DUI charge, Blackwell was charged with one felony (aggravated assault), two misdemeanors (simple assault and resisting arrest) based on her conduct at the scene of the traffic stop.  She also was charged with two summary offenses (failure to carry a driver's license and failure to exhibit driver's license on demand).  The jury acquitted Blackwell of aggravated assault, simple assault and resisting arrest.  The trial court found Blackwell guilty of failure to carry a driver's license and sentenced her to a fine of $25.00, and Blackwell did not appeal this summary conviction. None of these charges are at issue in this appeal.

Blackwell raises three issues on appeal:

Whether the briefing schedule that was ordered by the suppression court is violative of [Pa.R.Crim.P. 581] and the Due Process clauses of the Fifth and Fourteenth amendments of the United States Constitution[,] since it improperly required [Blackwell] to file a pre-hearing brief regarding the unconstitutionality of the traffic stop[,] in that [] Blackwell had already satisfied her initial and only burden by filing an omnibus pre-trial motion after which time the Commonwealth had the burden of production and the burden of persuasion at the suppression hearing?

Whether the suppression court erred in refusing to declare the traffic stop illegal under Article I, section 8 of the Pennsylvania Constitution as well as the Fourth Amendment and the Fourteenth Amendment of the United States Constitution and suppress all fruit of the poisonous tree, which was derived from the illegal traffic stop[,] since the 'MVR' [motor vehicle recording device] irrefutably demonstrated that Trooper Barry Rowland did not have reasonable suspicion or probable cause to effectuate the traffic stop?

Whether the evidence was insufficient to support [] Blackwell's conviction [under] 75 Pa.C.S. § 3802(a)(1)(driving under the influence – general impairment – incapable of safe driving - refusal - second offense)(M1)?

Brief For Appellant, p. 8.

Blackwell's first argument on appeal is that the trial court violated her procedural and constitutional rights by ordering her to file a memorandum in support of her motion to suppress in advance of both the Commonwealth's opposing memorandum and the suppression hearing. Blackwell contends that the court's order effectively shifted the burden of proof to her and gave the Commonwealth unfair advantage by permitting it to preview Blackwell's defense theories and adjust its strategy accordingly.

Blackwell waived this argument by failing to object to the April 29, 2013 order either in her memorandum in support of her motion to suppress or during the suppression hearing. Pa.R.A.P. 302(a) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); ***ABG Promotions v. Parkway Pub., Inc.***, 834 A.2d 613, 619 (Pa.Super.2003) (waiver applies even if issue raised for first time on appeal is constitutional question).

Even if Blackwell preserved this issue for appeal, it is devoid of merit. We see nothing in the Rules of Criminal Procedure that prohibits the trial court from directing the defendant to file a memorandum in advance of a suppression hearing or in advance of the Commonwealth's opposing memorandum. Nor do we consider such a directive to shift the burden of proof to Blackwell in violation of her constitutional rights. The Commonwealth bears the burden to prove at the suppression hearing that the defendant's rights were not infringed. ***Commonwealth v. Enimpah***, 106 A.3d 695, 701 (Pa.2014). A pre-hearing memorandum merely educates the trial court about the applicable law; it does not realign the burden of proof in any way. Even assuming the order to file a pre-hearing memorandum constituted a technical violation of Blackwell's rights, she fails to demonstrate that it caused actual prejudice, i.e., that the burden of proof actually shifted. The trial court's analysis at the conclusion of the suppression hearing indicates that it applied the proper burden of proof and

found that the Commonwealth met its burden of proving probable cause. N.T., 8/29/13, at 54-56. Moreover, Blackwell's claim that the Commonwealth was able to change its strategy in response to the memorandum is speculative, because she fails to identify the Commonwealth's strategy prior to her memorandum or how the Commonwealth changed its strategy afterward.

In her second argument, Blackwell contends that the trial court erred by denying her motion to suppress. In an appeal from the denial of suppression, our standard of review

> is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Wilson*, 111 A.3d 747, 754 (Pa.Super.2015). Moreover, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa.Super.2003).

During the suppression hearing, one of the arresting officers, State Trooper Rowland, testified that he has received training in DUI enforcement

and has been a patrol officer for 8½ years, during which time he has encountered numerous individuals driving under the influence. N.T., 8/29/13, at 9. In the early morning hours of December 1, 2012, Trooper Rowland, accompanied by Trooper Buchheit, observed Blackwell's car driving northbound on Route 64 near its intersection with Route 445 in Centre County. *Id*. at 11-12. Trooper Rowland followed Blackwell's car in his patrol vehicle, and he observed Blackwell's car speeding and weaving across the double yellow lines. *Id*. at 12-13. Trooper Rowland "paced" Blackwell's car for approximately one half mile, i.e., he "[got] behind the vehicle and follow[ed] it at the speed or approximately the same speed as the vehicle is going," using a speedometer to calculate the vehicle's speed.[3] *Id*. at 14, 16. The speedometer calculated Blackwell's car as traveling 53 miles per hour in a 45 mile per hour zone. *Id*. at 18. Trooper Rowland pulled over Blackwell's car on Washington Avenue slightly beyond the intersection of Washington Avenue and Route 64, approximately one mile from where the trooper first observed Blackwell's car. *Id*. at 12, 23.

The Commonwealth introduced a Google map which illustrated Route 64's northerly course between Route 445 and Washington Avenue. Commonwealth Exhibit 1.

_____

[3] On September 14, 2012, the Department of Transportation certified as accurate the speedometer that Trooper Rowland used to pace Blackwell's car. Commonwealth's Exhibit 2.

- 6 -

Most of Trooper Rowland's pursuit of Blackwell's car was videotaped on an MVR affixed to the rear view mirror in the trooper's vehicle. The Commonwealth introduced the MVR video during Trooper Rowland's testimony at the suppression hearing, but neither party moved for its admission into evidence.

The trial court denied Blackwell's motion to suppress. It ruled, on the basis of the video, that reasonable suspicion existed to stop Blackwell's car for DUI:

> And what I'm seeing on the video is a vehicle reacting to an oncoming vehicle by crossing the fog line substantially. And then on two other occasions from the [per]spective of the videocamera it appears that the vehicle is riding the center line [without] cross[ing]. And then at the very end before turning onto Washington Avenue there is a substantial period of time where the vehicle has again crossed the white fog line and then pulled back onto the road …

N.T., 8/29/13, at 54-55.[4] The trial court also found that Blackwell's rate of speed during the "pacing" period was 53 miles per hour, eight miles per hour over the speed limit. *Id*. at 55. Thus, the court concluded, Trooper Rowland had probable cause to pull over Blackwell's car for speeding. *Id*.

Presently, Blackwell contends that the video demonstrates that her car did not cross the fog lines or touch the center line during the pursuit. In

---

[4] As discussed below in footnote 6, we need not address whether reasonable suspicion existed to stop Blackwell's car for DUI. We only cite the trial court's ruling on this subject to demonstrate that the trial court based its decision to deny Blackwell's motion to suppress on the video.

addition, Blackwell claims that the video shows that she was not speeding, because (1) it is approximately one mile from Route 445 and the site of the traffic stop on Washington Road, (2) the video shows that the pursuit lasted one minute and sixteen seconds until Blackwell's car stopped, and (3) dividing the distance of one mile by the time of one minute and sixteen seconds equals a speed of 42.6315 miles per hour, 2.3685 miles per hour below the speed limit. Brief For Appellant, pp. 37-38.

Although the trial court never formally admitted the video into evidence during the suppression hearing,[5] the court regarded the video as admissible for purposes of this hearing, because it based its denial of Blackwell's suppression motion on the video. Moreover, both parties regarded the video as admissible for purposes of the suppression hearing, because they both contend in this Court that the video supports their respective positions on the suppression issue. Under these circumstances, we will deem the video admitted as a suppression hearing exhibit so that we can incorporate it into our review of Blackwell's suppression argument. This solution is consistent with Pa.R.A.P. 1926(b)(1)'s directive that "[i]f anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, the omission or

---

[5] During trial, the video was formally admitted into the trial record as Commonwealth exhibit 2. N.T., 9/16/14, p. 233.

- 8 -

misstatement may be corrected … by the … appellate court … on its own initiative at any time."

We now examine the record to determine whether the trial court properly held that the state troopers had probable cause to stop Blackwell's car for violating 75 Pa.C.S. § 3362 (Maximum Speed Limits). Section 3362 provides in relevant part:

> Except when a special hazard exists that requires lower speed for compliance with [75 Pa.C.S. §] 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits: … Any other maximum speed limit established under this subchapter.

75 Pa.C.S. § 3362(a)(3). A vehicle's rate of speed "may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile." 75 Pa.C.S. § 3368(a).

To justify the present stop, the trooper was required to possess probable cause that Blackwell violated section 3362(a)(3). ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.Super.2010) ("reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to [a] suspected violation" of the Motor Vehicle Code; instead, "[i]n such an instance, it is [incumbent] upon the officer to articulate specific facts possessed by him, at the time of the

- 9 -

questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [Code]").

The evidence supports the trial court's finding that Blackwell was speeding. Comparison of the landmarks on the video with the map of Route 64 shows that Trooper Rowland "paced" Blackwell's car (followed Blackwell's car at approximately the same speed) between Myers Street and Cherry Run Road. Given that the distance between Route 445 and Washington Road is approximately one mile, the map shows that the "pacing" distance between Myers Street and Cherry Run Road was approximately four tenths of one mile, more than enough within which to time Blackwell's speed under section 3368(a), and the distance between Cherry Run Road and the site of the stop on Washington Avenue was approximately three tenths of one mile. The video shows that Trooper Rowland activated his emergency lights at Cherry Run Road. In response, Blackwell's car immediately slowed down and then came to a stop on Washington Avenue. The video also demonstrates that Trooper Rowland's pursuit from Route 445 to the stop on Washington Avenue took one minute and sixteen seconds.

Although Blackwell's *average* speed during the pursuit was 42.6315 miles per hour (one mile in 76 seconds), the video demonstrates that her speed during the "pacing" period between Myers Street and Cherry Run Road was faster than her speed after Cherry Run Road. This higher speed corroborates the speedometer's report of Blackwell's rate of speed during

the "pacing" period as 53 miles per hour. And because the "pacing" period was more than three tenths of a mile, Trooper Rowland had probable cause to stop Blackwell's car for speeding under 75 Pa.C.S. §§ 3362(a)(3) and 3368(a).

Blackwell protests that probable cause did not exist to stop her for speeding because she ultimately was not charged with speeding. We disagree. Probable cause is an objective inquiry; probable cause to initiate a traffic stop arises when "the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 813 (1996). "[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with." *Sennett v. United States*, 667 F.3d 531, 535 (6th Cir. 2012) (*citing Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)); *see also Sennett*, 667 F.3d at 537 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("the fact that a suspect is never charged with an offense does not conclusively establish that officers did not have probable cause to arrest for the offense"). As illustrated above, the evidence, viewed objectively, established probable cause to stop Blackwell for speeding. The fact that she was not charged with speeding does not show the lack of probable cause to stop her for this offense. *Sennett*, 667 F.3d at 535, 537.

Accordingly, the trial court properly denied Blackwell's motion to suppress.[6]

In her third and final argument, Blackwell asserts that the evidence is insufficient to support her conviction for DUI or the jury's verdict that she refused to submit to a blood test following her arrest.

Our standard of review for such challenges is well-settled:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa.Super.2015).

The jury found Blackwell guilty under 75 Pa.C.S. § 3802(a)(1), which provides that "an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving,

_____

[6] Because the trial court properly determined that probable cause existed to stop Blackwell's car for speeding, we need not address the alternative ground that the Commonwealth gave for denying Blackwell's motion to suppress, viz., reasonable suspicion existed to stop Blackwell for DUI.

operating or being in actual physical control of the movement of the vehicle."

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution

> include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection [3802(a)(1)] case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa.2009).

In addition, "an individual who violates section 3802(a)(1) where the individual refused testing of blood or breath … and who has one or more prior offenses commits a misdemeanor of the first degree."[7] 75 Pa.C.S. § 3803(b)(4). Such an individual is subject to a mandatory minimum sentence of ninety days' imprisonment. 75 Pa.C.S. § 3803(c)(2)(i).

---

[7] Blackwell does not dispute that she has one or more prior DUI offenses.

The following evidence was adduced during trial: while "pacing" Blackwell's car on Route 64, Trooper Rowland determined that she was driving 53 miles per hour in a 45 mile per hour zone. N.T., 9/16/14, at 58-59. Trooper Rowland stopped Blackwell for speeding. There were two individuals in the car: Blackwell was the driver, and she was not in possession of her driver's license. *Id*. at 65-66. While speaking with Blackwell, Trooper Rowland detected an odor of alcohol and noticed that Blackwell's face was flushed, her eyes were glassy and bloodshot, and her speech was slurred. *Id*. at 66, 136. Trooper Rowland asked Blackwell to step out of the vehicle. When she did, she had difficulty with her balance. *Id*. at 66-67. Trooper Rowland asked her to submit to field sobriety tests. During the one-legged stand, she failed to follow instructions, swayed and constantly put her foot down. *Id*. at 70-71; Commonwealth exhibit 2 (video of traffic stop), time stamp 7:22-7:47. During the walk-and-turn, Blackwell failed to walk in a straight line, missed several heal-to-toe connections, had difficulty maintaining her balance, and quit the test after falling off the line, stating "this is ridiculous." N.T., 9/16/14, at 72-74; Commonwealth exhibit 2, time stamp 7:47-8:55. Trooper Rowland placed Blackwell under arrest for DUI, but she resisted. She pulled away while being handcuffed, yelled at her passenger, dragged her feet on the way to the police vehicle and resisted Trooper Rowland's attempts to place her in the back seat. N.T., 9/16/14, at 76-78. Trooper Buchheit, who was accompanying Trooper

Rowland, advised Blackwell that she would be tased if she did not cooperate. *Id*. at 90, 188-89. Blackwell began kicking repeatedly at Trooper Buchheit, who dry-stunned her in an attempt to induce her to cooperate. *Id*. at 80-84. Blackwell continued to resist. As Trooper Buchheit tried to reconnect the taser cartridge, the instrument was still arcing, and its prongs deployed into his hand. *Id*. at 195-96.

After confining Blackwell inside the police car, the troopers transported her to Mount Nittany Medical Center ("hospital"). N.T., 9/16/14, at 88. Trooper Rowland read Blackwell her implied consent warnings[8] from a DL-26 form, but she refused to sign the form or submit to a blood test, stating: "This is bullshit" and "hell no." *Id*. at 97, 127-28, 138-40, 169-70, 213-16. Trooper Rowland transported Blackwell to the county prison, which would

_____

[8] The "implied consent" warnings

> originate in 75 Pa.C.S.A. § 1547[,] [which provides] that, in Pennsylvania, drivers impliedly consent to a chemical test of 'breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving ... a vehicle' under the influence of alcohol or a controlled substance. 75 Pa.C.S.A. § 1547(a)(1). Where an officer requests that an individual submit to chemical testing, Section 1547(b)(2) requires that the officer warn the person: 'the person's operating privilege will be suspended upon refusal to submit to chemical testing" and "if the person refuses to submit to chemical testing, upon conviction or plea for violating [75 Pa.C.S.A. §] 3802(a)(1), the person will be subject to the penalties provided in [75 Pa.C.S.A. §] 3804(c) (relating to penalties).' 75 Pa.C.S.A. § 1547(b).

*Commonwealth v. Barr*, 79 A.3d 668, 670 n. 3 (Pa.Super.2013).

not process her because she claimed to be suffering from a diabetic episode. *Id*. at 88. Trooper Rowland drove Blackwell back to the hospital, where a physician examined her and determined that her blood sugar levels were in the normal range, and that she was intoxicated. *Id*. at 226-30.

Construed in the light most favorable to the Commonwealth, this evidence – in particular, her speeding, the odor of alcohol in her vehicle, her flushed features, her glassy and bloodshot eyes, her slurred speech, her demeanor during the traffic stop, her inability to perform field sobriety tests satisfactorily, her combativeness at the time of arrest, her refusal to take a blood draw while saying "this is bullshit", and the physician's conclusion that she was intoxicated -- establishes Blackwell's guilt beyond a reasonable doubt for DUI under section 3802(a)(1). *Cf. Commonwealth v. Graham*, 81 A.3d 137, 146-47 (Pa.Super.2013) (evidence was sufficient to support finding that defendant's impairment which rendered her unable to drive safely was caused by combined influence of alcohol and drug or combination of drugs, as necessary to support DUI conviction without introduction of expert testimony; police officer who had received extensive training with respect to recognizing signs and behaviors of individuals driving under the influence observed defendant's erratic driving behavior, unsteadiness, and inability to perform field sobriety tests, and defendant refused to submit to chemical test of her blood).

Furthermore, viewed in the light most favorable to the Commonwealth, the evidence supports the jury's determination that Trooper Rowland read Blackwell her implied consent warnings but that she refused to submit to a blood test following her arrest. Therefore, the trial court properly graded Blackwell's offense as a first degree misdemeanor for purposes of sentencing, 75 Pa.C.S. § 3803(b)(4), and properly sentenced Blackwell to a mandatory minimum of 90 days' imprisonment under 75 Pa.C.S. § 3803(c)(2)(i).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2015