**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Aymen ELMOBDY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 6, 2003.

Filed April 24, 2003.

John J. Fioravanti, Jr., Doylestown, for appellant.

Diane E. Gibbons, Asst. Dist. Atty., Doylestown, for Com., appellee.

BEFORE: HUDOCK, TODD and OLSZEWSKI, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence entered after Appellant was convicted of possession of a controlled substance with intent to deliver.[1] We affirm.

¶ 2 Appellant was charged with aggravated assault and other crimes in Mercer County, New Jersey, on August 10, 1998. Bail was set at fifty thousand dollars. A bail bond was issued and Appellant was released from custody pending trial. However, he failed to appear in court on October 10, 2000 for a criminal proceeding. Robert Clark (Clark), a fugitive recovery agent employed by AA Bail Bonding Company (AABBC), located Appellant at a hotel in Bucks County, Pennsylvania on October 11, 2000. Accompanied by AABBC subcontractors Layne Dagostino (Dagostino) and Marcel Centeno (Centeno), Clark knocked on the door to Appellant's room and identified himself. Appellant refused to open the door. With permission of the hotel manager, one of the men threw a

---

1.  35 P.S. § 780–113(a)(30).

brick through the window. Appellant ran out of the room. The bondsmen chased Appellant and subdued him with pepper spray in the parking lot. They then took him back to the sidewalk outside of his room. At Appellant's request, Centeno entered the room and obtained water for him. Appellant was told that his father would be liable for the broken window as co-signer of his bond unless Appellant had money to pay for it. Appellant responded that he had money in a bag in his room and asked Dagostino to enter his room and retrieve money from the bag. Dagostino located a duffel bag in the room and opened it. He found a wallet containing money, three pounds of marijuana and a loaded firearm. The bondsmen gave the bag to hotel employees and told them to contact the police. They left the scene with Appellant but returned after speaking by phone with an official in New Jersey who told them to turn Appellant over to the local police. Bristol Township police officers arrested Appellant and took him to the hospital for treatment. They took Appellant's bag back to the police station and inventoried its contents. His hotel room was searched after officers obtained a warrant.

¶ 3 Based on the marijuana found in his bag, Appellant was charged with possession of a controlled substance with intent to deliver. Appellant filed a motion seeking to suppress the evidence against him claiming that the bail bondsmen who arrested him had violated his constitutional rights. The trial court denied Appellant's motion after a hearing. Following a bench trial, Appellant was convicted of possession of a controlled substance with intent to deliver and sentenced to a term of incarceration of two to four years to run concurrent with any sentence he received in New Jersey. Appellant filed a timely notice of appeal and raises a single issue for our review, whether the trial court erred in failing to grant his motion to suppress the evidence against him.

In an appeal from the denial of a motion to suppress, our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Commonwealth v. Ayala*, 791 A.2d 1202, 1207 (Pa.Super.2002). It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. *Commonwealth v. Griffin*, 785 A.2d 501, 505 (Pa.Super.2001). The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing. *Id.*

¶ 4 We must first consider whether Appellant's characterization of the bail bondsmen as state actors is accurate under the facts of this case. Both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by the government or its agents. *Ayala*, 791 A.2d at 1207. However, the proscriptions of the Fourth Amendment

and Article 1, Section 8 do not apply to searches and seizures conducted by private individuals. *Commonwealth v. Harris*, 572 Pa. 489, 817 A.2d 1033, 1046 (2002). *See also Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317, 320–21 (1985) (explaining that the Fourth Amendment proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, performed by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official); *see also Commonwealth v. Parrella*, 416 Pa.Super. 131, 610 A.2d 1006, 1009 (1992) (holding that a tape recording of a suspect made by private individuals not acting under color of state authority was not state action and therefore not subject to suppression under either the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution). Our Supreme Court discussed the principles of state action as follows:

> [T]he guiding principles [of state action] are those first established by the United States Supreme Court in *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar*, the Supreme Court held that the conduct allegedly causing the deprivation must be fairly attributable to the state. In explaining the "fair attribution" test, the United States Supreme Court stated:
>
>> [Our] cases reflect a two-part approach to the question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the state ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because ... his conduct is otherwise chargeable to the state.
>> *Lugar*, [457 U.S. at 937, 102 S.Ct. 2744].
>
> The critical factor for purposes of determining whether state action is involved is whether the private individual, in light of all the circumstances, must be regarded as having acted as an "instrument" or agent of the state.
>
> *Commonwealth v. Price*, 543 Pa. 403, 410, 672 A.2d 280, 283 (1996). Where the relationship between the individuals committing the wrongful acts and the government is such that those acts can be viewed as emanating from the authority of the state, our case law dictates a finding of state action. *Id.*, 543 Pa. at 411, 672 A.2d at 284. In making such a determination, a court must consider the purpose of the search, the party who initiated it, and whether the government acquiesced in it or ratified it. *Commonwealth v. Riedel*, 539 Pa. 172, 177, 651 A.2d 135, 138 (1994). In *Riedel* the Court held that hospital workers who drew blood from a patient were not acting as state agents because they were under no direction from the police to take the blood, but did so on their own initiative and for their own purposes. *Id.* Individual acts do not become governmental action merely because they are later relied upon and used by the government in furtherance of its objectives. *Harris*, 817 A.2d at 1046.

■ ¶ 5 The record reveals that Clark, Dagostino and Centeno were not law enforcement officers. They were employees or sub-contractors of AABBC, a private company. They pursued Appellant because AABBC had received a notice that a bail bond it had issued on Appellant's behalf would be forfeited in forty-five days unless it could locate him. Clark explained at the hearing that his basis for capturing Appellant was a contractual agreement. Clark and his assistants never contacted any police officers, prosecutors or judges in Bucks County before attempting to apprehend Appellant at the hotel. They did not enter Appellant's room at the

behest of police officers or public officials, in either Pennsylvania or New Jersey, in order to search for narcotics. Rather, their actions were focused on apprehending Appellant. They only searched his bag at his request in order to locate his money. They did not speak with any law enforcement officers until after they apprehended Appellant and found the marijuana. The record supports the conclusion that the bail bondsmen apprehended Appellant on their own initiative and for their own purposes, not as state actors. The fact that evidence they found was later used by the police did not make them state actors. "The mere use by police and prosecutors of the results of an individual's actions does not serve to 'ratify' those actions as conduct of the state." *Commonwealth v. Corley*, 507 Pa. 540, 547, 491 A.2d 829, 832 (1985).

¶ 6 We note that our conclusion in this case is consistent with the previous understanding in Pennsylvania that bail bondsmen acting to retrieve a suspect who has violated bail are not public officials or state agents. *See Commonwealth ex rel. Ford v. Hendrick*, 215 Pa.Super. 206, 257 A.2d 657, 668–69 (1969) (Hoffman, J., dissenting) (criticizing reliance on professional bounty hunters who are unrestrained by constitutional limitations to recapture suspects who have jumped their bail); *see also Reinhart v. Bonanno*, 1986 WL 4804, at *1 (E.D.Pa. April 21, 1986) (stating that a bail bondsman is an independent businessman whose actions cannot be fairly attributable to the state). Because no state action led to the discovery of the marijuana in Appellant's bag, his constitutional rights were not violated. Therefore, his claims that the evidence found in his bag should have been suppressed and that the search warrant for his room was based upon illegally obtained evidence are without merit.

¶ 7 Even assuming for the sake of argument that the bondsmen were state actors, Appellant's claim that he was subjected to an unreasonable search and seizure is unsupported by the record. Several "facts" that Appellant cites to support his claim are based upon his own testimony at the suppression hearing which was contradicted by Commonwealth witnesses. Appellant claims that the bondsmen used unreasonable force because they hit him and used pepper spray after he had been placed in handcuffs. However, the bondsmen testified on behalf of the Commonwealth that they believed Appellant was armed and used pepper spray only until he was subdued. After handcuffing Appellant, they quickly obtained water to alleviate the symptoms of the spray. Appellant also claims that his room, including spaces above the ceiling tiles, was searched by the bondsmen without his permission. However, the Commonwealth witnesses testified that no search was conducted beyond looking for water and for money in the duffel bag containing Appellant's wallet, both at Appellant's request. Appellant contends that this testimony was incredible because he would not have given anyone permission to go into a bag containing a large amount of marijuana. However, as noted above, when reviewing the denial of a suppression motion we are limited to considering the testimony of the Commonwealth's witnesses and only as much of the defense testimony as remains uncontradicted. The trial court found Appellant's testimony to be not credible. Thus, Appellant's claims that the AABBC agents used unreasonable force or searched his room without his permission are without support in the record.

¶ 8 Appellant also claims that AABBC had no authority to apprehend him because it was not the surety on his bail bond, but acted on the mistaken belief

that it was. The evidence concerning this allegation was contradictory, and the trial court declined to adopt Appellant's version of events. As noted previously, AABBC did receive a notice of bond forfeiture due to Appellant's failure to appear in court. Appellant also maintains that the bondsmen had no authority to capture him because they never applied for a bail piece pursuant to Pennsylvania Rule of Criminal Procedure 536. Rule 536 sets forth a procedure by which a surety on a bail bond may apply to the court for authorization to apprehend and detain a defendant and bring him before the bail authority without delay. Pa.R.Crim.P. 536(B). However, Appellant had not violated bail granted by any Pennsylvania court, but rather that of a New Jersey court. We note that the United States Supreme Court has indicated that bounty hunters may pursue bail jumpers across state lines. *See Taylor v. Taintor*, 16 Wall. 366, 83 U.S. 366, 371, 21 L.Ed. 287 (1872) (explaining that a bounty hunter may pursue a principal into another state and break into his home in order to apprehend him). Appellant has made no argument that the bondsmen, who had a notice of bond forfeiture from the New Jersey court, were without authority to act under New Jersey law and cites no case law indicating that they were required to contact Pennsylvania authorities before apprehending Appellant here. As noted previously, the bondsmen turned Appellant over to the police officers in Bucks County after catching him. Thus, Appellant's claim that the bondsmen failed to comply with proper procedures for extraditing him to New Jersey is irrelevant because he was not taken there by them, but rather remained in Pennsylvania.

¶ 9 Judgment of sentence affirmed.