J-S04024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES EMORY SMITH, | |
| Appellant | No. 724 MDA 2014 |

Appeal from the Judgment of Sentence entered April 1, 2014,
in the Court of Common Pleas of Cumberland County,
Criminal Division, at No(s): CP-35-CR-0000688-2013

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED FEBRUARY 09, 2015**

Charles Emory Smith, ("Appellant"), appeals from the judgment of sentence imposed after the trial court convicted him of two counts of driving under the influence, one count of habitual offender, one count of driving while his operating privileges were suspended, one count of unlawful activities, and one count of operating a vehicle without an official certificate of inspection.[1]  We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (a)(2), 6503.1, 1543(b)(1), 4107(b)(2) and 4703(a).

---

*Retired Senior Judge assigned to the Superior Court.

On Sunday, November 4, 2012, at approximately 1:30 a.m., [Appellant] was travelling eastbound on Trindle Road in Cumberland County, Pennsylvania. Trooper Michael Burns was travelling westbound on Trindle Road that night. Trooper Burns has been a member of the Pennsylvania State Police since 1999 and has extensive training in DUI recognition, investigation, and enforcement. Trooper Burns has previously made over 50 DUI arrests in this area of Trindle Road.

As he was travelling west on Trindle Road, Trooper Burns observed that [Appellant's] vehicle had illuminated windshield wiper washer nozzles on the hood of the vehicle. Trooper Burns knew that the illuminated windshield wiper washer nozzles constituted an equipment violation under the Pennsylvania Vehicle Code and the Pennsylvania Vehicle Inspection Requirements. Trooper Burns also knew that illuminated windshield wiper washer nozzles are not standard equipment on a 1990 Mazda Miata. Trooper Burns then immediately turned his patrol vehicle around and proceeded eastbound behind [Appellant's] vehicle with the intent to stop [Appellant's] vehicle and cite him for the equipment violation.

As he began following [Appellant], Trooper Burns observed the vehicle continuously drift from side to side in his lane of traffic. [Appellant] did not cross the center line or the fog line, but he would drive onto the lines. On one occasion, [Appellant's] vehicle drifted toward the path of an oncoming westbound vehicle. This incident was recorded on Trooper Burns' motor vehicle recorder. Trooper Burns then made a stop of [Appellant's] vehicle and [Appellant] was subsequently charged with the above-captioned offenses.

[Appellant] filed an Omnibus Pretrial Motion on July 26, 2013. [Appellant] sought to suppress any evidence obtained from the traffic stop, arguing that there was not probable cause or reasonable suspicion to effectuate the traffic stop. A hearing on [Appellant's] Omnibus Pretrial Motion was held on October 24, 2013. [Appellant's] motion was denied on November 5, 2013.

Trial Court Opinion, 6/4/14, at 2-3 (footnote omitted).

A non-jury trial commenced on February 25, 2014, at the conclusion of which the trial court found Appellant guilty of the aforementioned crimes. On April 1, 2014, the trial court sentenced Appellant to a term of imprisonment of 13 to 33 months. This appeal followed. Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal, and on June 4, 2014 and June 10, 2014, the trial court entered two opinions pursuant to Pa.R.A.P. 1925(a), separately addressing Appellant's two claims.

Appellant presents the following issues for our review:

> I.    WHETHER A NEW TRIAL IS WARRANTED AFTER DENIAL OF A SUPPRESSION MOTION WHERE THE COMMONWEALTH DID NOT ESTABLISH DURING THE HEARING THE ELEMENTS OF THE OFFENSE WHICH FORMS THE BASIS OF THE TRAFFIC STOP?
>
> II.   WHETHER DESPITE A SUFFICIENTLY LENGTHY DRIVING RECORD TO BE CONVICTED AS A MISDEMEANOR 2 "HABITUAL OFFENDER," THE TRIAL COURT ERRED BY SO CONVICTING APPELLANT WHEN HE HAD NOT BEEN DESIGNATED ADMINISTRATIVELY AS SUCH BY PENNDOT PRIOR TO THE INSTANT ARREST?

Appellant's Brief at 6.

In his first issue, Appellant challenges the denial of his suppression motion.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record

as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Reppert***, 814 A.2d 1196, 1200 (Pa. Super. 2002) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). However, the suppression court's conclusions of law, which are not binding on an appellate court, are subject to plenary review. ***Commonwealth v. Johnson***, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

Here, Appellant argues that the trial court erred in denying his suppression motion because the Commonwealth failed to meet its burden of proving, by a preponderance of the evidence, that Appellant violated the Vehicle Code. Appellant's Brief at 14-25. Trooper Burns stopped Appellant for a suspected violation of 67 Pa.Code § 175.66(h), which pertains to vehicle lighting and electrical systems, and precludes certain ornamental lamps, unless they are available as "original equipment" on the vehicle. Appellant argues that the Commonwealth failed to demonstrate that the illuminated windshield wiper nozzles on Appellant's vehicle were not "original

equipment." Appellant's Brief at 14-15. Appellant asserts that, absent any evidence as to whether or not the illuminated nozzles were an original component of Appellant's car, the Commonwealth failed to demonstrate that Trooper Burns possessed probable cause to believe that Appellant had violated 67 Pa.Code § 175.66(h). We disagree.

In order to effectuate a valid traffic stop, Trooper Burns was required to possess probable cause to believe that a Vehicle Code violation had occurred.[2] "There is a clear distinction between what is required for purposes of establishing probable cause for a warrantless arrest or search and what is required for proving guilt. The arresting officer need not have had in hand evidence which would suffice to convict as it is only the probability, and not a prima facie showing of criminal activity, that is the standard for justifying arrest. The probable cause necessary to support an arrest . . . cannot demand the same strictness of proof as the accused's guilt upon a trial..." *Commonwealth v. Anderson*, 302 A.2d 504, 506 (Pa. Super. 1973).

_____

[2] *See Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, 'it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code*.'").

In the present case, Trooper Burns testified that based on his training and experience, he believed that illuminated wiper nozzles were not original equipment on Appellant's 1990 Mazda Miata, and that the illuminated nozzles violated the Pennsylvania regulations pertaining to ornamental lamps. N.T., 10/24/13, at 8, 14. **See** 97 Pa.Code § 175.66(h). Trooper Burns testified that in the past he had issued citations with regard to violations of the "ornamental lamps" regulation "well in excess of a dozen times", and that he believed Appellant's illuminated nozzles constituted such a violation. We agree with the trial court that under the totality of the circumstances, the facts articulated by Trooper Burns were sufficient to provide probable cause to support the traffic stop. Although Appellant argues that Trooper Burns presented no direct evidence to confirm that the illuminated wiper nozzles were not original equipment on Appellant's 1990 Mazda Miata, we reiterate that Trooper Burns was not required to provide evidence sufficient to sustain a conviction, but only to establish probable cause to believe that a Vehicle Code violation was occurring. "Probable cause means only the probability and not a prima facie showing of criminal activity [and] is less than evidence which will justify a conviction." **Commonwealth v. Canning**, 587 A.2d 330, 332 (Pa. Super. 1991) (emphasis and citations omitted). Because our review of the record supports the trial court's determination that Trooper Burns possessed the requisite probable cause to believe that Appellant was violating the

- 6 -

"ornamental lamps" prohibition to justify the stop of Appellant's vehicle, we find no error in the trial court's denial of Appellant's suppression motion.

Appellant next argues that the trial court erred when it found him guilty of violating 75 Pa.C.S.A. § 6503.1 pertaining to habitual offenders, when he had not been designated administratively as a habitual offender by the Pennsylvania Department of Transportation ("PennDot") prior to trial. Appellant's Brief at 26-28. Specifically, Appellant argues that the trial court was without authority to convict him under § 6503.1 because it was solely the function of PennDot to designate him as a "habitual offender", and the trial court could not usurp PennDot's authority. *Id*. We find no merit to this claim.

Appellant was convicted under 75 Pa.C.S.A. § 6503.1, which provides:

A habitual offender under section 1542 (relating to revocation of habitual offender's license) who drives a motor vehicle on any highway or trafficway of this Commonwealth while the habitual offender's operating privilege is suspended, revoked or canceled commits a misdemeanor of the second degree.

Section 1542 of the Vehicle Code, which defines the term "habitual offender" reads in pertinent part:

(a) General rule.--The department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A "habitual offender" shall be any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

> (b) Offenses enumerated.--Three convictions arising from separate acts of any one or more of the following offenses committed by any person shall result in such person being designated as a habitual offender:
>
> (1) Any violation of Subchapter B of Chapter 37 (relating to serious traffic offenses).
>
> (1.1) Any violation of Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs) except for sections 3808(a)(1) and (b) (relating to illegally operating a motor vehicle not equipped with ignition interlock) and 3809 (relating to restriction on alcoholic beverages).
>
> (1.2) Any violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked).
>
> (2) Any violation of section 3367 (relating to racing on highways).
>
> (3) Any violation of section 3742 (relating to accidents involving death or personal injury).
>
> (3.1) Any violation of section 3742.1 (relating to accidents involving death or personal injury while not properly licensed).
>
> (4) Any violation of section 3743 (relating to accidents involving damage to attended vehicle or property).

(emphasis added).

Appellant does not argue that he lacks the prior convictions necessary to designate him as a habitual offender. Rather, Appellant argues that because, at the time of trial, PennDot had not revoked his license for being a habitual offender under section 1542, the trial court was precluded from convicting him as a habitual offender under section 6503.1.

Section 1542 defines a habitual offender as "any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions...." Here, the trial court found, and Appellant does not dispute, that he incurred the requisite number of prior convictions. As the trial court explained:

> [Regardless of] whether [Appellant] was labeled, notified, declared or forced to wear a scarlet "H.O.," [Appellant's] 22 page driving record makes it abundantly clear that [Appellant] was, is, and perhaps ever shall be an habitual offender.
>
> ***
>
> [Appellant] was labeled, designated and notified that he was an habitual offender five times under the 1976 statute. After the statute was amended in 1994 (which essentially reset the clock) [Appellant] incurred the following convictions from "separate acts" within a five year period:
>
> 1. Driving Under the Influence: violation date – June 16, 2000; conviction date – November 7, 2001.
> 2. Driving Under the Influence: violation date – September 9, 2000; conviction date – November 7, 2001.
> 3. Driving Under Suspension (DUI related): violation date – October 19, 2005; conviction date – October 21, 2005.
> 4. Driving Under the Influence: violation date – May 22, 2004; conviction date – July 17, 2006.
>
> Noteworthy, [Appellant] received an additional conviction for Driving Under Suspension (DUI related), on September 21, 2011, which, pursuant to § 1542(e) resulted in an additional period of suspension for two years. This final suspension is effective on March 7, 2029.
>
> If [Appellant] has no further infractions, he will be eligible to receive his license in March of 2031, approximately six

months shy of his 80th birthday. Lest anyone celebrate prematurely, we note that [Appellant] has never been deterred from driving by the mere fact that he has been unlicensed. Thus, we hold out no hope that any sentence imposed by this court or suspension imposed by the Pennsylvania Department of Transportation will have any impact on [Appellant's] driving behaviors.

[Pursuant to 75 Pa.C.S.A. § 6503.1] it is not necessary ... for the offense to occur during a period when his license is suspended for being an habitual offender. Rather, the Commonwealth need prove merely that [Appellant] operated a motor vehicle in the Commonwealth while his license was suspended, revoked, or cancelled for any reason, and that he did so after racking up the necessary convictions under § 1542(b). We are satisfied that the Commonwealth met this burden.

Trial Court Opinion, 6/10/14, at 1-3.

We agree with the trial court that Appellant met the requirements for designation as a habitual offender as defined in Section 1542 by virtue of his prior convictions. *See Commonwealth v. Raven,* 97 A.3d 1244, 1252 (Pa. Super. 2014) ("A conviction for habitual offenders requires the Commonwealth to demonstrate that a person has accumulated three separate convictions for serious traffic offenses within a five-year period."). We thus find no error by the trial court.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2015