J-S12018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WILLIAM NANBOATENG DUODU | |
| Appellee | No. 1047 MDA 2016 |

Appeal from the Order Entered June 21, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001298-2015

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 12, 2017**

The Commonwealth appeals[1] from the order dated June 21, 2016, entered in the Court of Common Pleas of Centre County, granting, in part, and denying, in part, William Nanboateng Duodu's motion to suppress.  The Commonwealth claims the trial court erred in granting Duodu's motion because the evidence at issue was discovered pursuant to a lawful search and seizure of Duodu's vehicle.  After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The suppression court's findings of fact are as follows:

---

[1]   The Commonwealth has certified in its notice of appeal that the suppression order will terminate or substantially handicap its prosecution of the case.  *See* Pa.R.A.P. 311(d).

1. On August 18, 2015, Trooper Christopher Pifer was monitoring westbound traffic on Interstate 80 in Boggs Towhnship [sic], Centre County. Trooper Pifer was stationed at the mile marker 166 crossover when he observed a gold Nissan bearing Georgia plates in the left lane attempting to pass another vehicle. However, immediately upon coming into view of Trooper Pifer's patrol unit, the Nissan moved behind the vehicle it had been attempting to pass.

2. Finding this behavior suspicious, Trooper Pifer began to follow the Nissan, whereupon he observed it traveling less than a single car length behind the vehicle in front of it at speeds in excess of seventy miles per hour.

3. While following the Nissan, Trooper Pifer took the time to run the vehicle's registration information, which came back "cancelled" out of Georgia. Trooper Pifer then activated his overhead lights and conducted a traffic stop. The vehicle pulled over at mile marker 159 in a curved area of the roadway.

4. Trooper Pifer approached the vehicle from the passenger side and made contact with [Duodu], who was the only occupant in the vehicle. Trooper Pifer testified that [Duodu] would only put his window down approximately two inches to speak with him. He further testified that when [Duodu] handed him his documentation, his hands were visibly shaking, and that his level of nervousness seemed to be more than that of the ordinary, innocent motoring public.

5. Trooper Pifer asked [Duodu] basic questions about where he was coming from, and he noticed that [Duodu] would pause before answering questions and seemed to have difficulty answering simple questions. In response to Trooper Pifer's questions, [Duodu] indicated he was returning from Allentown to Johnstown, both of which the Trooper testified are source-cities for drug trafficking.

6. Trooper Pifer also observed an odor spray and excessive number of air fresheners in the vents, on the mirror, as well as several packages on the floor and in the glovebox.

7. After obtaining [Duodu]'s information, Trooper Pifer returned to his patrol vehicle to run the vehicle and driver information, including a criminal history check and again verifying the vehicle's registration information. These checks revealed [Duodu] had both weapons and automobile theft convictions, as well as a drug history. Trooper Pifer again verified the "cancelled" registration.

8. Trooper Pifer returned to [Duodu]'s vehicle to inquire about the vehicle's owner, and learned it was owned by a third party not present. [Duodu] was not able to give the last name of the individual who owned the car.

9. Trooper Pifer asked more questions about [Duodu]'s travel plans. [Duodu] indicated he ha[d] been traveling for a few days, but Trooper Pifer only observed one small bag in the backseat.

10. Trooper Pifer then returned to his vehicle a second time and attempted to contact a K9 officer to do an exterior search of the vehicle, but none were in the immediate vicinity. In the meantime, Trooper Pifer approached [Duodu]'s vehicle again to verify the VIN number.

11. [Duodu] was then asked to exit the Nissan and step between his car and the patrol unit for Trooper Pifer to explain the warning about the "cancelled" registration. While explaining the registration warning, Trooper Pifer asked [Duodu] a few follow-up questions about his trip.

12. [Duodu] indicated he had gone to Allentown because someone had died. When asked where he stayed, [Duodu] hesitated and then provided two different street names and told the Trooper he knew a lot of people in the Allentown area.

13. Trooper Pifer asked [Duodu] for consent to search the car, provided [Duodu] with the written consent form, but [Duodu] denied consent saying he was not comfortable agreeing to that as he was not the owner of the car. Trooper Pifer asked if there was anything in the car he needed to know about; [Duodu] indicated no.

14.   Trooper Pifer asked [Duodu] which items were his, but [Duodu] couldn't answer. Trooper Pifer then followed up by asking if the black bag in the back seat belonged to him and [Duodu] said yes.

15.   After [Duodu] refused consent to search, Trooper Pifer explained he intended to call a K9 unit to come do an exterior search of the vehicle. A K9 unit was still not available in the area, so Trooper Pifer had the car towed back [to] the Rockview barracks and planned to apply for a search warrant.

16.   Trooper Pifer testified that he was unable to search the vehicle on scene because the location of the vehicle on a bend in the road, the foggy weather, and the number of passing tractor trailers presented safety concerns. He also testified that [Duodu] was not lawfully allowed to drive the car from the scene due to the cancelled registration. Per standard procedure, the car would have to be towed from the scene and would be subject to an inventory search to look for valuables and any other items that may need to be secured.

17.   Trooper Pifer explained this to [Duodu] and further indicated he could not remain on the side of the highway and would have to return to the barracks with him. Trooper Pifer further explained to [Duodu] that he was not under arrest, but that pursuant to standard procedure, he would have to be searched and placed in handcuffs for the duration of the trip to the station.

18.   Once back at the station, Trooper Pifer removed the handcuffs from [Duodu] and he was permitted to remain in the lobby by himself. Trooper Pifer then began preparing the search warrant for [Duodu]'s vehicle. While he was doing this, [Duodu]'s vehicle arrived at the barracks and was placed in the enclosed garage area.

19.   Trooper Pifer approached the vehicle to double check the VIN number, and as he was walking around it he detected an odor of marijuana from inside the vehicle. He then took [Duodu] into custody.

20.     Trooper Matthew Petrof arrived with his dog, Eric, who is trained to alert to the presence of controlled substances. Trooper Petrof deployed Eric on [Duodu]'s vehicle, and he signaled on the rear passenger door.

21.     Trooper Pifer incorporated this information into his search warrant application, which was signed that day by the Honorable Kelley Gillette-Walker. The application sought to search the vehicle for contraband, documentation related to travel, bank statements and financial documents, among other things. These items were listed on an attachment standard to Pennsylvania State Police drug interdictions searches and the attachment was reviewed by Trooper Pifer prior to its submission.

22.     Once MDJ Gillette-Walker signed the search warrant, Trooper Pifer searched [Duodu]'s vehicle. The search recovered approximately 600 empty stamp bags, a large amount of pure heroin, and three (3) ounces of an unknown white substance.

Trial Court Opinion, 6/21/2016, at 1-5.

Duodu was subsequently charged with one count each of possession with the intent to deliver a controlled substance, possession of a controlled substance, possession of a small amount of marijuana, and possession of drug paraphernalia.[2] Duodu filed a pre-trial motion to suppress evidence, an amended/supplemental motion, and a second amended/supplemental motion on October 12, 2015, January 12, 2016, and March 8, 2016, respectively. A hearing was held regarding the matter on April 12, 2016. Thereafter, on June 21, 2016, in an order and corresponding opinion, the court granted Duodu's suppression motion, in part, with respect to the

_____

[2] 35 Pa.C.S. §§ 780-113(a)(30), (a)(16), (a)(31), and (a)(32), respectively.

physical evidence seized from the car. The court denied the motion, in part, as to the statements made by Duodu to police. The Commonwealth filed this timely appeal on June 24, 2016.[3]

In its sole issue on appeal, the Commonwealth complains the court erred in granting Duodu's motion to suppress as to the evidence recovered from his vehicle following the seizure and impoundment of the car. Specifically, the Commonwealth asserts the impoundment and subsequent search of Duodu's vehicle was valid because Trooper Pifer possessed probable cause to justify the warrantless seizure of the car based on its inherent mobility. Commonwealth's Brief at 19-20. Relying on **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), the Commonwealth states, "There is no difference between the constitutional implications of seizing a vehicle before obtaining a warrant to conduct a search and conducting an immediate search without a warrant. Such seizures must be supported by probable cause." Commonwealth's Brief at 16 (citation omitted). It also points to the following as evidence that Trooper Pifer possessed probable cause: (1) Duodu was stopped pursuant to a valid traffic stop on Interstate 80, a major corridor for drug trafficking; (2) Duodu

---

[3] On June 27, 2016, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth filed a concise statement on July 18, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 19, 2016, relying on its June 21, 2016, opinion.

appeared nervous, his hands were visibly shaking, and he only rolled his window down two inches; (3) Duodu had trouble answering basic questions; (4) Duodu was traveling to and from well-known narcotics source cities; (5) the trooper observed a number of masking agents, like air fresheners, in the vehicle; (6) Duodu recently pled guilty to drug trafficking; (7) the out-of-state vehicle belonged to a third party who was not present at the time of the incident and whom Duodu could not identify by last name or provide contact information; (8) Duodu said he was on an extended trip but had insufficient luggage in the car; and (9) Duodu could not provide a specific address or the name of individuals with whom he had been staying. *Id.* at 20. The Commonwealth asserts, "It is clear that the facts adduced by Trooper Pifer during the course of the valid traffic stop were sufficient to lead a man of his training and experience to believe that criminal activity was afoot" and therefore, "Trooper Pifer had a sufficient basis to justify the warrantless seizure of [Duodu]'s vehicle." *Id.* at 20-21. The Commonwealth also points to *Commonwealth v. Loughnane*, 128 A.3d 806 (Pa. Super. 2015), *appeal granted in part*, 158 A.3d 1224 (Pa. 2016), to support its argument, stating that case held "a) police were not required to obtain a search warrant prior to seizing the defendant's vehicle, and b) mere

mobility presented sufficient exigent circumstances to justify the seizure."

Commonwealth's Brief at 18 (citation omitted).[4]

Our standard of review of a trial court's order granting a defendant/appellee's motion to suppress evidence is well established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. **Commonwealth v. Miller**, 2012 PA Super 251, 56 A.3d 1276, 1278-79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

**Commonwealth v. Korn**, 139 A.3d 249, 252-253 (Pa. Super. 2016), *appeal denied*, 159 A.3d 933 (Pa. 2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression

---

[4] Moreover, the Commonwealth argues the marijuana odor emanating from the vehicle as well as the K9's exterior search provided additional probable cause that the vehicle contained evidence of criminal activity. *Id.* at 21. Lastly, the Commonwealth contends the justification for the warrantless seizure did not vanish because Trooper Pifer could not safely conduct the search where he stopped the vehicle. *Id.*

hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted), *appeal denied*, 847 A.2d 58 (Pa. 2004). Nevertheless, the suppression court's conclusions of law are not binding on an appellate court, and are subject to plenary review. ***Commonwealth v. Johnson***, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

The Fourth Amendment of the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. The Pennsylvania Constitution also protects this interest by ensuring, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures …." Pa. Const. Art. I, § 8. Moreover, "a lawful search generally extends to the entire area in which the object of the search may be found." ***Commonwealth v. Rega***, 933 A.2d 997, 1013 (Pa. 2007) (citation omitted), *cert. denied*, 552 U.S. 1316 (2008).

In ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), the Pennsylvania Supreme Court, in an Opinion Announcing the Judgment of the Court ("OAJC"),[5] "adopt[ed] the federal automobile exception to the warrant

_____

[5] It merits mention that while ***Gary*** is a plurality decision, the result is precedential due to the nature of Justice Saylor's concurring opinion. ***Gary***, 91 A.3d at 138 ("I join the lead Justices in adopting the federal automobile exception.").

requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." **Gary**, 91 A.3d at 104.[6]  Further, the Court opined:

> The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.  The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a per se exigency allowing police officers to make the determination of probable cause in the first instance in the field.

**Id.** at 138.

The Pennsylvania Supreme Court has defined probable cause as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability*, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

---

[6]  Before the **Gary** decision was announced, "in order for police officers to conduct a lawful search of an automobile without a warrant, the officers were required to have probable cause and exigent circumstances." **Commonwealth v. Hudson**, 92 A.3d 1235, 1241 (Pa. Super. 2014) (emphasis added), *appeal denied*, 106 A.3d 724 (Pa. 2014).

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citation

omitted) (emphasis in original), *cert. denied*, 136 S. Ct. 201 (U.S. 2015).

Here, the trial court found as follows:

> Based on the totality of the above circumstances, the Court finds that Trooper Pifer developed reasonable suspicion that criminal activity was afoot such to justify an investigatory detention after the initial traffic stop. ***See Commonwealth v. Rogers***, 849 A.2d 1185 (Pa. 2004) (Totality of the circumstances including extreme nervousness, presence of masking agents, prior drug convictions, fraudulent vehicle paperwork, and reasonable inferences derived therefrom, gave rise to reasonable suspicion justifying detention and search); ***Commonwealth v. Kemp***, 961 A.2d 1247 (Pa. Super. Ct. 2008) (Reasonable suspicion existed where defendant exhibited extremely nervous behavior, was operating a third party vehicle, there was an overwhelming odor of air fresheners, defendant failed to provide correct name of owner of vehicle, and he was traveling from a source city). Accordingly, Trooper Pifer also had the requisite reasonable suspicion to conduct a canine sniff of the exterior of the vehicle.

> However, at the time Trooper Pifer was in need of a K9 unit, none were readily available. Instead of waiting for a K9 unit to arrive on scene, Trooper Pifer had the vehicle towed back to the barracks. Trooper Pifer testified that per standard Pennsylvania State Police procedure, he was required to tow the vehicle from the roadway because it could not be lawfully driven away due to the cancelled registration. However, the Commonwealth has provided no evidence of such a policy or procedure. The Court finds it difficult to imagine that in dealing with the ordinary motoring public, the police tow every vehicle with a registration violation after having given the driver a warning and having no other cause for suspicion. This practice seems illogical and would result in a waste of resources. The Court finds that in the instant case, the decision to tow [Duodu]'s vehicle, while made with actual reasonable suspicion, was pre-textual. Trooper Pifer did not yet have probable cause to seize the vehicle, and therefore, all evidence obtained after the vehicle was seized is fruit of the poisonous tree and must be suppressed.

Trial Court Opinion, 6/21/2016, at 9-10. We agree with the trial court's conclusion.

"It is well settled that an officer may stop a motor vehicle if the officer reasonably believes that a provision of the Motor Vehicle Code is being violated. Incident to this stop, the [officer] may check the vehicle's registration and the driver's license and issue a citation." ***Commonwealth v. Henley***, 909 A.2d 352, 358 (Pa. Super. 2006) (citations and internal quotation marks omitted), *appeal denied*, 927 A.2d 623 (Pa. 2007). Here, Trooper Pifer testified that he stopped Duodo for a canceled vehicle registration. N.T., 4/12/2016, at 14. Duodo concedes a canceled registration is a violation of the Motor Vehicle Code. ***See*** Duodo's Brief at 31. Further, the trial court found "Trooper Pifer developed reasonable suspicion that criminal activity was afoot such to justify an investigatory detention after the initial traffic stop." Trial Court Opinion, 6/21/2016 at 9 (citation omitted).

Next, because the stop was proper, we must determine whether Trooper Pifer possessed probable cause to search the car pursuant to ***Gary***, ***supra***. As noted above, the Supreme Court in Gary "adopt[ed] the federal automobile exception to the warrant requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." ***Gary***, 91 A.3d at 104. Here, the Commonwealth's argument

appears to infer that under ***Gary***, and in turn, ***Loughnane***,[7] the exigency of the mobility of the vehicle modifies the necessity of the officer possessing probable cause in order to search and seize. This is erroneous. Under ***Gary***, the exigency replaces the need for the officer to obtain a search warrant prior to further investigation; it does not eliminate the requirement of probable cause.

Furthermore, as found by the trial court, there is critical testimony missing that would have supported an inference of probable cause that Duodo was committing a crime. ***See Martin***, ***supra***. For example, Trooper Pifer discovered during the **initial** criminal background check that Duodo had prior gun charges and automobile theft, but not a drug history. N.T., 4/12/2016, at 21-22, 75.[8] The trooper did not observe a gun in the car, the

_____

[7] In ***Loughnane***, a panel of this Court held "***Gary*** applies to vehicles parked in driveways at private residences, because driveways are not part of a home's curtilage, and an individual does not have a reasonable expectation of privacy over the driveway." ***Loughnane***, 128 A.3d at 817. The Pennsylvania Supreme Court has granted the defendant's petition for allowance to appeal to determine: "Whether the Superior Court erred by holding that the automobile exception, adopted in ***Commonwealth v. Gary***, 625 Pa. 183, 91 A.3d 102 (Pa. 2014), allowed police to seize a vehicle from the defendant's private residential driveway without a warrant?" ***Loughnane***, 158 A.3d 1224 (Pa. 2016).

[8] The trooper testified that during his initial criminal history check, there was no drug history indicator for Duodo. N.T., 4/12/2016, at 75. It is unclear from the record when the trooper later determined Duodo did indeed have a drug record but not for drug trafficking. ***Id.*** at 22.

**car was not reported stolen**,[9] and there were no drugs or paraphernalia in plain view.[10] Trooper Pifer's observations of Duodo and the appearance of the car, such as his nervousness, his narrative of the trip, and an excessive number of air fresheners, only rose to the level of reasonable suspicion and did not convert to probable cause. Indeed, this is evidenced by the fact that the trooper was only going to give Duodo a warning regarding the canceled registration. Accordingly, the Commonwealth's argument fails.

We offer the following additional analysis with respect to the seizure of the vehicle because Trooper Pifer did not search the vehicle until after he had it towed and impounded. Section 6309.2(a)(2) of the Pennsylvania Motor Vehicle Code addresses the immobilization, towing, and storage of vehicles for driving without registration or insurance and provides, in relevant part:

> **(a) General rule.-** Subject to subsection (d), the following shall apply:
>
> …

---

[9] We point out the fact that given Duodo's criminal history of automobile theft, the car in which he was traveling was not reported as "stolen." As such, we agree with the trial court that there was no other reason for suspicion to tow the vehicle.

[10] Moreover, the trooper did not see anything in the glove compartment when Duodo opened it and he did not smell any drugs in the car during the traffic stop. N.T., 4/12/2016, at 50, 72. The trooper also did not testify that Duodo appeared to be under the influence of any type of narcotic.

(2) If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended for failing to maintain financial responsibility, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the motor vehicle or combination shall be immobilized by the law enforcement authority, and the appropriate judicial authority shall be so notified.

75 Pa.C.S. § 6309.2(a)(2).

An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) **the police have acted in accordance with a reasonable, standard policy** of routinely securing and inventorying the contents of the impounded vehicle. [*South Dakota v.*] *Opperman*, 428 U.S. [364,] 375 [(1976)].

*Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013) (emphasis added).

Turning to the present matter, as found by the trial court, the Commonwealth did not offer into evidence the Pennsylvania State Police policy or procedure with respect to towing a vehicle under these circumstances, and the trial court found the trooper's testimony regarding such police policy to be incredible. *See* Trial Court Opinion, 6/21/2016, at 9-10.[11] *See also Elmobdy*, *supra* (credibility determinations are within the sole province of the suppression court). Additionally, Trooper Pifer did not testify that Duodo's vehicle jeopardized public safety. There was no

_____

[11] It merits mention the Commonwealth also did not present this Court with such procedure documents on appeal.

- 15 -

evidence presented that the vehicle was blocking traffic or too close to the highway lanes. Rather, the trooper testified that he could not perform a search safely where he stopped the vehicle because "we were on a curve, it was a foggy morning, and there was multiple traffic-trailers [sic] that went by the location in the right lane, passing us." N.T., 4/12/2016, at 32.[12] Therefore, we find the Commonwealth did not demonstrate the towing and the inventory search of Duodo's vehicle were proper. Accordingly, we conclude the trial court did not err in granting Duodo's motion to suppress.

        Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/2017

_____

[12] We note these facts are distinguishable from **Henley**, where the court did find the vehicle at issue posed a public safety threat. **See Henley**, 909 A.2d at 365 (noting "appellant's vehicle was stopped in the middle of the roadway such that it constituted a traffic hazard; that the particular street on which appellant's vehicle was stopped did not permit parking on either side; and that there was a great amount of snow on the road, preventing appellant from pulling onto the sidewalk so as not to interfere with traffic.").