J-A10039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JASON P. ROACH | : | |
| | : | |
| Appellee | : | No. 1440 MDA 2021 |

Appeal from the Order Entered October 8, 2021
In the Court of Common Pleas of Bradford County
Criminal Division at No(s):  CP-08-CR-0000311-2021

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED:  JULY 11, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Bradford County Court of Common Pleas, granting the suppression motion of Appellee, Jason P. Roach.  We reverse.

The suppression court opinion set forth the relevant facts and procedural history of this appeal as follows:

> 1. On November 11, 2020, Officers Casey Shiposh and Seth Murrelle of the Sayre Borough Police Department observed a motor vehicle, known to them to be unregistered, being operated on West Lockhart Street in Sayre Borough.  While following the motor vehicle, the officers electronically verified that it was unregistered and then subjected the vehicle to a traffic stop.
>
> 2. Officer Shiposh made contact with the vehicle's driver, Erica Coolbaugh, and Officer Murrelle moved to the passenger side of the vehicle in order to be better able to view the ongoing movements of the vehicle's passenger, subsequently identified as [Appellee].  [Appellee's] movements involved reaching in and around the

passenger's seat, and were, in the officer's opinion, "furtive" in nature. Following his initial contact with [Appellee], and based upon his observation of [Appellee's] "furtive" movements, Officer Murrelle asked [Appellee] to alight from the vehicle which he did without incident.

3. Once outside of the vehicle, [Appellee] was asked if he was in possession of anything illegal or that could hurt the officers, to which question he replied in the affirmative, explaining that there was a hypodermic needle in his right front pocket. [Appellee] surrendered the hypodermic needle to the officers who then searched [Appellee's] person and found United States currency in the amount of $500.00, which amount was seized as evidence.[1]

4. While being searched, [Appellee] spontaneously uttered the words "good luck finding it" several times. [Appellee] was queried by the officers as to the meaning of the statements but he refused to answer.

5. Following the search of [Appellee's] person, the officers noticed a black bag in plain view on the floor of the vehicle in front of the passenger seat. The bag, which was observed as having a clear sandwich baggie protruding therefrom, was searched with the result that multiple individual clear sandwich baggies and a knife were found therein.

6. Based upon the seizure of the hypodermic needle, the $500.00 in United States currency, and the black bag, [Appellee] was placed under arrest for Possession of Drug Paraphernalia and removed by the Officers to the Sayre Borough police station where he was strip searched during which procedure a white baggie containing a crystal-like substance fell out of [Appellee's] underwear. The baggie of crystal-like substance was seized by the officers and [Appellee] was charged with Possession of a Controlled Substance.

---

[1] At the suppression hearing, Officer Shiposh testified that the needle recovered from Appellee contained a small amount of residue that was consistent with drug use. (*See* N.T. Suppression Hearing, 8/3/21, at 46).

(Suppression Court Opinion, filed October 7, 2021, at 1-2) (internal footnotes omitted).

On April 30, 2021, the Commonwealth filed an information charging Appellee with multiple offenses related to the contraband recovered from the vehicle and Appellee's person. Appellee filed his suppression motion on June 17, 2021. In it, Appellee argued that "the police lacked probable cause to ask [Appellee] if he had anything on him such as a weapon or anything illegal … since they had no reason to believe so." (Brief in Support of Motion, filed 6/17/21, at 3) (unnumbered). Further, Appellee contended that his subsequent arrest was illegal because the police lacked probable cause to believe he had committed a crime. (*See* Suppression Motion, filed 6/17/21, at ¶7).

On August 3, 2021, the court conducted a suppression hearing. At that time, Officers Shiposh and Murrelle provided testimony. The court granted Appellee's suppression motion on October 7, 2021. Specifically, the court determined:

> [A]s the only circumstance influencing the officers' decision to remove [Appellee] from [the] vehicle and detain him for investigation of unspecified criminal activity was the observation of furtive movements, the incriminating nature of which was not explained, the officers cannot be said to have had reasonable suspicion to believe that [Appellee] was involved in ongoing criminal activity or that he was armed. Therefore, the actions taken by the officers during the investigative detention … were unlawful….

(Suppression Court Opinion at 8).

The Commonwealth timely filed a notice of appeal on November 5, 2021 pursuant to Pa.R.A.P. 311(d). On November 8, 2021, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth subsequently complied.

The Commonwealth now raises one issue on appeal:

> Did the suppression court err in granting the motion to suppress by concluding that the officer lacked reasonable suspicion to conduct an investigative detention beyond the initial traffic stop?

(Commonwealth's Brief at 3).

On appeal, the Commonwealth contends "that police do not need even reasonable suspicion to request both drivers **and** passengers alight from a vehicle that has been lawfully stopped." (*Id.* at 9) (emphasis in original). The Commonwealth notes there is no dispute that Appellee was the passenger in a vehicle subject to a lawful traffic stop, and that police ordered Appellee out of the car after Officer Murrelle observed Appellee's furtive movements. The Commonwealth insists that the court committed an error of law by concluding that the officers illegally ordered Appellee out of the vehicle at that point. Based upon the foregoing, the Commonwealth concludes that the court erroneously granted Appellee's suppression motion. We agree.

"At a suppression hearing, 'the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.'" ***Commonwealth v. Heidelberg***, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*) (quoting ***Commonwealth v. Galendez***, 27 A.3d

1042, 1046 (Pa.Super. 2011) (*en banc*)). When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are well-settled:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa.Super. 2003), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004) (internal citations omitted).

Our analysis of the quantum of cause required for a traffic stop begins with the Motor Vehicle Code, which provides:

### § 6308. Investigation by police officers

\* \* \*

> **(b)** **Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

"[D]espite subsection 6308(b)'s reasonable suspicion standard, some offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." ***Commonwealth v. Ibrahim***, 127 A.3d 819, 823 (Pa.Super. 2015), *appeal denied*, 635 Pa. 771, 138 A.3d 3 (2016). "For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa.Super. 2017). ***See also Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.Super. 2010), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (2011) (stating mere reasonable suspicion will not justify vehicle stop when driver's detention cannot serve investigatory purpose relevant to suspected violation).

Further, we note that an "investigative detention" is interchangeably labeled as a "stop and frisk" or a "***Terry***[2] stop." ***Commonwealth v. Brame***,

---

[2] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

239 A.3d 1119, 1127 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

> An investigative detention … constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> *          *          *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[W]hen an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car." *Commonwealth v. Brown*, 654 A.2d 1096, 1102 (Pa.Super. 1995), *appeal denied*, 544 Pa. 642, 664 A.2d 972 (1995). During a traffic stop, the officer may ask the detainees "a moderate number of questions to determine [their] identity and to try to obtain information confirming or dispelling the officer's suspicions." *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 237 A.3d 393 (2020). "Further, 'if there

is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.'" *Id.* (quoting *Commonwealth v. Chase*, 599 Pa. 80, 93 n.5, 960 A.2d 108, 115 n.5 (2008)).

Instantly, at the suppression hearing, Officer Murrelle testified that officers observed Ms. Coolbaugh's vehicle, which was "known" to law enforcement from being "involved in numerous different things." (N.T. Suppression Hearing, 8/3/21, at 25). Officer Murrelle was aware that the vehicle's registration was expired at the time of the incident. (*See id.*) Moreover, prior to initiating the traffic stop, the officers contacted the county dispatcher to confirm that the vehicle's registration had expired. *Id.* Under these circumstances, the officers possessed probable cause to lawfully stop Ms. Coolbaugh's vehicle. *See Harris, supra*.

As the officers approached Ms. Coolbaugh's vehicle, Officer Murrelle observed Appellee making furtive movements. (*See* N.T. Suppression Hearing at 26). Specifically, Appellee was "reaching around in the vehicle, both lean[ing] forward … as well as turning to his left and right." (*Id.*) After noticing the furtive movements, Officer Murrelle spoke with Appellee to ascertain his name and date of birth. (*Id.* at 34). The officers also directed Appellee to exit the vehicle. (*Id.* at 26). Contrary to the suppression court's conclusion, the officers legally ordered Appellee to exit the vehicle. *See*

***Brown, supra***.  Further, the observation of furtive movements created the need for additional questions to confirm or dispel the officers' suspicions regarding Appellee's conduct.  ***See Wright, supra***.

The officers subsequently asked Appellee if he had anything on his person which could harm them.  (***See*** N.T. Suppression Hearing at 26).  Appellee responded that he was carrying a hypodermic needle in his pocket, which the officers later seized.  (***Id.*** at 26-27).  This occurred before the initial traffic stop had ended.  (***Id.*** at 47).  Given the late-night hour, Appellee's furtive movements, and his admission to carrying a hypodermic needle, the officers developed "additional suspicion" that Appellee was engaged in criminal conduct prior to the conclusion of the initial vehicle stop.  ***See Wright, supra***.  On this basis, the police lawfully initiated a separate investigative detention of Appellee.  ***See Wright, supra***; ***Jones, supra***.  Accordingly, we reverse the order granting Appellee's suppression motion and remand this case for further proceedings consistent with this decision.  ***See Korn, supra***.

Order reversed.  Case remanded with instructions.  Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/11/2022